IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,  )<br>  )<br>        Plaintiff,  )<br>  )<br>vs.  )<br>  )<br>RICK OLIVER,  )<br>  )<br>        Defendant,  ) | 8:02CR3<br><br>MEMORANDUM AND ORDER |

This matter is before the court on the "Motion to Vacate Sentence and Conviction Pursuant to Title 28 U.S.C. § 2255" (§ 2255 motion), Filing No. 20, filed by defendant, Rick Oliver. The government has filed an answer, Filing No. 27, to the § 2255 motion.

The one-count information charges that

> On or about, during and between, December 1, 1999, and March 30, 2001, the defendant Rick Oliver, dba Game Doctors, in the District of Nebraska, knowingly and willfully circumvented and caused to be circumvented a copyright protection system for commercial advantage, to wit: the defendant, for financial gain, modified and caused to be modified a Sony Playstation game platform through an insertion of a modified chip that circumvents Sony software security measures, to allow the Playstation to play unauthorized copies of copyright protected Sony computer games. All in violation of Title 17, United Stated Code, Sections 1201(a)(2)(A) and 1204(a)(1).

The defendant pled guilty to the one-count information. On May 20, 2002, the defendant was sentenced to seven months in prison and a total of $40,000 in restitution costs payable to Sony Entertainment of America. No direct appeal was filed and this is the defendant's first motion pursuant to 28 U.S.C. § 2255.

## § 2255 CLAIMS

In his § 2255 petition and accompanying brief, the defendant raised the following claims: 1) ineffective assistance of counsel; 2) denial of the right to appeal; 3) conviction

obtained by use of coerced confession; and 4) conviction obtained by the unconstitutional failure of the prosecution to disclose evidence favorable to the defendant.

## A.  INEFFECTIVE ASSISTANCE OF COUNSEL

Claims of ineffective assistance of trial counsel are properly raised in proceedings under 28 U.S.C. § 2255.  *See,* e.g., *United States v. Smith*, 62 F.3d 1073, 1078 (8th Cir. 1995).  "A claim of ineffective assistance of counsel should normally not be part of a direct appeal but should be raised in collateral proceedings under 28 U.S.C. § 2255 because such a claim usually cannot be advanced without development of the record." *Smith*, 62 F.3d at1078.  *Accord United States v. Guzman-Landeros*, 207 F.3d 1034, 1034 (8th Cir. 2000); *United States v. Mitchell*, 136 F.3d 1192, 1193 (8th Cir. 1998).

The Sixth Amendment guarantees that an accused shall have "the Assistance of Counsel for his defense."  *U.S. Const. amend. VI.*  "It follows from this that assistance which is ineffective in preserving fairness does not meet the constitutional mandate . . . and it also follows that defects in assistance that have no probable effect upon the trial's outcome do not establish a constitutional violation."  *Mickens v. Taylor*, 535 U.S. 162, 166 (2002), *citing Strickland v. Washington*, 466 U.S. 668, 685-86 (1984).  *See also Bell v. Cone*, 535 U.S. 685, 695 (2002):

> We reasoned that there would be a sufficient indication that counsel's assistance was defective enough to undermine confidence in a proceeding's result if the defendant proved two things:  first, that counsel's "representation fell below an objective standard of reasonableness," [*Strickland*], 466 U.S., at 688 . . . ; and second, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.*, at 694. . . .  Without proof of both deficient performance and prejudice to the defense, we concluded, it could not be said that the sentence or conviction "resulted from a breakdown in the adversary process

2

  that rendered the result of the proceeding unreliable," *id.*, at 687 . . . , and the sentence or conviction should stand.

*Bell,* 535 U.S. at 695.

  "The *Strickland* test has two parts: whether counsel's performance was in fact deficient and, if so, whether the defendant was prejudiced by the inadequate representation. If we can answer 'no' to either question, then we need not address the other part of the test. . . . Under the first part of the *Strickland* test, we consider counsel's performance objectively and gauge whether it was reasonable 'under prevailing professional norms' and 'considering all the circumstances'. . . . We look at counsel's challenged conduct at the time of his representation of the defendant and we avoid making judgments based on hindsight." *Fields v. United States*, 201 F.3d 1025, 1027 (8th Cir. 2000), quoting *United States v. Flynn*, 87 F.3d 996, 1000 (8th Cir. 1996).

  In evaluating whether counsel's performance fell below an objective standard of reasonableness, the court must examine "whether counsel's assistance was reasonable considering all the circumstances." *Strickland*, 466 U.S. at 688. "A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case. At the same time, the court should recognize that counsel is strongly

presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690.

*Strickland* requires the court to "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Accordingly, a defendant must overcome the presumption that counsel's challenged action "might be considered sound trial strategy." *Id.*

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

*Id.*

To meet the prejudice prong of the test, the defendant must show a reasonable probability that absent his counsel's deficient conduct, the outcome of the defendant's case would have been altered. See *Mickens*, 535 U.S. at 165, *citing Strickland*, 466 U.S. at 694. "As a general matter, a defendant alleging a Sixth Amendment violation must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Mickens* at 166, *citing Strickland* at 694. More specifically, "[t]o show prejudice, [the defendant] must show a reasonable probability that absent the alleged errors of counsel he would have been found not guilty." *United States*

*v. Robinson*, 301 F.3d 923, 925 (8th Cir. 2002). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. As explained in *Strickland*, "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686. The ultimate focus of the *Strickland* inquiry is always on the "fundamental fairness of the proceeding whose result is being challenged." *Id.* at 696.

In this case the defendant claims that the paperwork sent to his attorney's office stated he was not working and his attorney had the responsibility to notify the probation office and the judge that the defendant had been working. However, the counsel's representation of the defendant, in this case, did not fall below reasonable standards. The defendant is unable to show that absent the counsel's errors, the result of the proceeding would have been different, or specifically that the defendant would have been found not guilty. Whether the defendant was working or not has an insignificant impact on the outcome of this case. The facts clearly show that the defendant's contention of ineffective assistance of counsel is without merit.

### B.  DENIAL OF RIGHT TO APPEAL

"For such a claim to succeed, however, [defendant] must show that she instructed her counsel to file an appeal." *Barger v. United States*, 204 F. 3d 1180, 1182 (2000). *See Holloway v. United States*, 960 F.2d 1348, 1357 (8th Cir. 1992). "It is well established that, for an indigent defendant, the 'right to be furnished counsel [for appeal] does not depend upon a request,' but the desire to appeal must be manifest." *Barger,* 204 F.3d at 1182, quoting *Swenson v. Bosler,* 386 U.S. 258, 260 (1967). A bare assertion by the petitioner

that she made a request is not by itself sufficient to support a grant of relief, if evidence that the fact-finder finds to be more credible indicates the contrary proposition. *Barger,* 204 F. 3d at 1182, *citing Rodriguez v. United States*, 964 F.2d 840, 842 (8th Cir.1992). The Supreme Court explained that in those cases in which the attorney has consulted with the defendant about an appeal, counsel "performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal." *Barger,* 204 F. 3d at 1182, quoting *Roe v. Flores-Ortega,* 528 U.S. 470, 470 (2000).

> We instead hold that counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing. In making this determination, courts must take into account all the information counsel knew or should have known. *See Strickland,* 466 U.S. at 690 (focusing on the totality of the circumstances). Although not determinative, a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings. Even in cases when the defendant pleads guilty, the court must consider such factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights. Only by considering all relevant factors in a given case can a court properly determine whether a rational defendant would have desired an appeal or that the particular defendant sufficiently demonstrated to counsel an interest in an appeal.

*Flores-Ortega*, 528 U.S. at 480.

The defendant fails to assert that his counsel was even aware of his desire to file an appeal, although defendant claims that he tried to contact his attorney on numerous occasions, but his counsel failed to return his telephone calls. However, the defendant was given notice of his right to appeal. Pursuant to the defendant's sentencing, he became notified by the court that he had ten days to file an appeal from the date the order was

6

signed. The court signed the judgment on May 24, 2002, and the defendant's counsel claims he spoke to the defendant on May 29, 2002, and the defendant made no indication of wanting to file an appeal. It is also important to note that the defendant made no indication of what specific issues he wished to appeal. The plea agreement sets forth the possible terms of imprisonment and cost of restitution, in which the defendant agreed. Filing No. 2. The seven months' imprisonment and $40,000 cost of restitution are in accordance with the plea agreement and there appears to be no error in this case. Filing No. 2.

It is clear the defendant had the capacity to protect his own rights. In order to ensure his right to appeal, the defendant could have filed a notice of appeal pro se and requested counsel. Secondly, as previously mentioned, the defendant was fully aware of his right to appeal because the court advised the defendant of his right to appeal and the relevant time limits at trial. In addition, the plea factors in the above *Flores-Ortega* case suggest that the defendant's attorney would have no reason to suppose that the defendant wanted an appeal. The case also states that an attorney who does not file an appeal automatically, in the absence of a communicated request to do so, does not per se render ineffective assistance of counsel. Therefore, the court concludes that the defendant was not prejudiced by his attorney's failure to file an appeal in this case.

## C. COERCED CONFESSION

The defendant alleges that since this case was the first of its kind in the United States, he was offered a plea agreement that lessened a charge. Filing No. 20. However, in accordance with the Petition to Enter a Plea of Guilty, the defendant marked "yes" to the question, "Are your plea of guilty and the waivers of your rights made voluntarily and

completely of your own choice, free of any force or threats from anyone?" Filing No. 2. The defendant further responded, "I am making this agreement because I believe it to be in my best interest." *Id.* In addition, when specifically asked by the court if anyone had used any force against him or threatened him in anyway to plead guilty, the defendant responded "No." Tr. at 19. In accordance with the plea agreement, the defendant agreed to the terms of imprisonment and the amount of restitution to be paid to Sony. Filing No. 2. Although the defendant's argument is difficult to follow, the defendant clearly fails to provide evidence of coercion in this case.

### D. FAILURE TO DISCLOSE

The defendant claims that his conviction was obtained by the unconstitutional failure of the prosecution to disclose evidence favorable to the defendant. The defendant alleges that the evidence filed by the prosecution failed to show that the microchips that he had been selling actually benefitted Sony Entertainment of America (Sony). Filing No. 20. Defendant believes that the evidence presented only portrayed the financial loss Sony suffered, and failed to show the financial gain. Filing No. 20. However, the defendant alleges that he is guilty and specifically stated, "For a fee I modified a Sony Playstation game platform by installing a microchip which permitted Sony security measures to be circumvented." Filing No. 2. In accordance with the plea agreement signed by the defendant, it is clearly stated that the defendant agrees to make a restitution in the amount of $40,000 to Sony. Filing No. 2. When the defendant alleged that he was guilty of the crime set forth before him, he became fully aware of the amount he owed to Sony. Even if Sony had made money as a result of the defendant's criminal conduct, it simply does not

negate the fact that the defendant is guilty of violating Sony's copyright.  Consequently, the court finds this claim to be without merit.

THEREFORE, IT IS ORDERED:

1.  The defendant's "Motion to Vacate Sentence and Conviction Pursuant to Title 28 U.S.C. § 2255," Filing No. 20, is denied.

2.  A separate judgment of dismissal with prejudice will be filed in accordance with this Memorandum and Order

DATED this 18th day of July, 2005.

BY THE COURT:

s/ Joseph F. Bataillon
JOSEPH F. BATAILLON
United States District Judge